UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

ALEXIS GALLARDO SOLIS,

                              Plaintiff,                      19 Civ. 5383 (PAE)

              -v-

                                                  OPINION & ORDER

CHAD WOLF, *Acting Secretary of Homeland Security*,
KENNETH CUCCINELLI, *Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services*, and MICK DEDVUKAJ, *Acting District Director, New York District, U.S. Citizenship and Immigration Services*,[1]

                              Defendants.

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Alexis Gallardo Solis, a citizen of Mexico, seeks a declaratory judgment that 8 U.S.C. § 1182(a)(9)(C)(i)(I) does not bar his admission to the United States as a permanent resident and that defendants violated the Administrative Procedure Act ("APA") in finding him inadmissible on that basis.

      Before the Court is defendants' motion to dismiss the Complaint for failure to state a claim upon which relief can be granted. The Court holds, with defendants, that Gallardo Solis is ineligible for the relief he seeks as a matter of law, and therefore grants the motion.

---

[1] Defendants were each sued in their official capacity. By operation of law, defendants Wolf, Cuccinelli, and Dedvukaj have therefore succeeded, respectively, former Acting Secretary McAleenan, former Director Cissna, and former District Director Cioppa as defendants in this case. *See* Fed R. Civ. P. 25(d). The Clerk of Court is respectfully directed to update the caption of the case.

I.   **Background**[2]

    A.   **The Parties**

Gallardo Solis is a native and citizen of Mexico. Compl. ¶ 8. He seeks admission to the United States as a lawful permanent resident. *Id.* ¶¶ 1, 18–21.

Defendant Chad Wolf, sued in his official capacity, is the Acting Secretary of Homeland Security. In this role, he "oversees . . . U.S. Citizenship and Immigration Services [("USCIS")], which adjudicates applications filed by individuals to obtain immigration benefits," such as permanent residence. *Id.* ¶ 2. Defendant Kenneth Cuccinelli, sued in his official capacity, is the Senior Official Performing the Duties of the Director of USCIS. *Id.* Defendant Mick Dedvukaj, Acting District Director of USCIS's New York District Office, also sued in his official capacity, "has been delegated the authority to adjudicate immigration applications filed within his district and is responsible for the adjudication of [Gallardo Solis's] application for lawful permanent residence." *Id.*

    B.   **Facts**

The relevant facts are not in dispute. Gallardo Solis was born on January 13, 1990 and was brought to the United States when he was 15 months old by his grandfather, who walked across the border from Mexico to California. *Id.* ¶ 8. Gallardo Solis therefore entered the United States without inspection. He was raised in Queens, New York and did not learn that he lacked lawful immigration status in the United States until he was in middle school. *Id.* ¶ 9.

---

[2] The facts are drawn primarily from the Complaint. Dkt. 2 ("Compl."). For the purpose of resolving a motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

In 2005, Gallardo Solis's mother was diagnosed with cancer and, in August 2015, returned to Mexico, taking Gallardo Solis with her. *Id.* ¶ 10. One month later, however, she learned that she could receive treatment in the United States and decided to return to the United States. *Id.* ¶ 11. In September 2005, Gallardo Solis, then 15 years old, "re-entered the United States without inspection by walking across the border from Mexico into California." *Id.* ¶ 12.

In November 2017, Gallardo Solis applied for admission to the United States as a lawful permanent resident ("Adjustment of Status") on the basis of his marriage to a U.S. Citizen. *Id.* ¶ 18. On November 27, 2018, Gallardo Solis and his wife attended an Adjustment of Status interview with USCIS in New York. USCIS concluded that the couple's marriage was *bona fide*, *id.* ¶ 19, but denied Gallardo Solis's application for Adjustment of Status, *id.* ¶ 29. USCIS determined that Gallardo Solis was barred from admission by 8 U.S.C. § 1182(a)(9)(C)(i)(I). *Id.* ¶¶ 27–29. Gallardo Solis moved for reconsideration, *id.* ¶ 28, but, in January 2019, USCIS denied his motion, *id.* ¶ 29. Gallardo Solis thereafter brought this lawsuit, seeking declaratory relief.

### C.      Procedural History

On June 7, 2019, Gallardo Solis initiated this action, Dkt. 1, and on August 9, 2019, successfully filed his Complaint, Compl. On December 5, 2019, Defendants filed a motion to dismiss the Complaint, Dkt. 10, and a supporting memorandum of law, Dkt. 11 ("Def. Mem."). On December 5, 2019, the Court issued an order directing Gallardo Solis to either oppose the motion or amend his Complaint, indicating that "[n]o further opportunities to amend will ordinarily be granted." Dkt. 12. On December 17, 2019, Gallardo Solis filed a memorandum of law in opposition to the motion to dismiss. Dkt. 13 ("Pl. Opp'n"). On January 9, 2019, defendants filed a reply. Dkt. 14 ("Reply").

## II.     Applicable Legal Principles

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

For the purpose of resolving a motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch*, 699 F.3d at 145.  That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A defense that turns on a clear question of statutory interpretation is properly adjudicated in the context of a motion to dismiss." *Vullo v. Office of Comptroller of Currency*, 378 F. Supp. 3d 271, 290 (S.D.N.Y. 2019) (internal quotation marks and ellipsis omitted).  Here, Gallardo Solis contends that defendants' interpretation of § 1182 was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of the APA.  5 U.S.C. § 706(2)(A); *see* Compl. ¶ 38.  Where, as here, an agency interprets a statute it administers, the Court applies the familiar two-step *Chevron* analysis.  *See Nwozuzu v. Holder*, 726 F.3d 323, 326 (2d Cir. 2013) ("Agency interpretations of statutes are reviewed under *Chevron*[.]").

At step one of the *Chevron* analysis, "the court considers whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).  If so, "that is the end of the matter; for the [C]ourt, as well as the

agency, must give effect to the unambiguously expressed intent of Congress." *Id.*; *see also id.* at 843 n.9 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."). "To determine if Congress spoke clearly, the [C]ourt employs the ordinary tools of statutory construction. These tools include the statutory text, structure, and purpose as reflected in the statute's legislative history, and, if the text is ambiguous, canons of statutory construction." *New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 517–18 (S.D.N.Y. 2019) (internal quotation marks, citations, and alterations omitted). "If Congress was not clear—meaning the statute [i]s silent or ambiguous with respect to the specific issue—then the court continues to step two. At step two, the question for the court is whether the agency's answer is based on a permissible construction of the statute. This inquiry is deferential, asking only whether the agency's interpretation is reasonable[.]" *Id.* at 518 (internal quotation marks, citations, and alterations omitted).

### III. Discussion

The Court first addresses Gallardo Solis's APA claim. The Court finds the statutory provisions at issue unambiguous and further finds that, in light of the statute's plain meaning, Gallardo Solis is ineligible for the relief he seeks as a matter of law. The Court then addresses Gallardo Solis's claim for relief under the Declaratory Judgment Act.

#### A. Claim for Relief Under the APA

##### a. *Relevant Statutory Provisions*

The Court begins by reviewing the two statutory provisions at issue in this case. The first is 8 U.S.C. § 1182(a)(9)(B) ("Section (9)(B)"), entitled "Aliens unlawfully present," which provides, in relevant part, that:

> (B) Aliens unlawfully present
>> (i) In general: Any alien (other than an alien lawfully admitted for permanent residence) who—
>>> (I) . . .
>>>
>>> (II) has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States,
>>
>> is inadmissible.
>
>> (ii) Construction of unlawful presence
>> For purposes of this paragraph, an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled.
>
>> (iii) Exceptions
>>> (I) Minors
>>> No period of time in which an alien is under 18 years of age shall be taken into account in determining the period of unlawful presence in the United States under clause (i).
>>>
>>> (II) Asylees . . .
>>>
>>> (III) Family unity . . .
>>>
>>> (IV) Battered women and children . . .
>>>
>>> (V) Victims of a severe form of trafficking in persons . . .
>
>> (iv) Tolling for good cause . . .
>
>> (v) Waiver . . .

8 U.S.C. § 1182(a)(9)(B).

The second statutory provision is the very next section of § 1182(a)(9): § 1182(a)(9)(C) ("Section (9)(C)"), entitled "Aliens unlawfully present after immigration violations." It provides, in its entirety:

> (C) Aliens unlawfully present after previous immigration violations
>> (i) In general: Any alien who—

6

> (I) has been unlawfully present in the United States for an aggregate period of more than 1 year, or
>
> (II) has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law,
>
> and who enters or attempts to reenter the United States without being admitted is inadmissible.
>
> (ii) Exception
> Clause (i) shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Secretary of Homeland Security has consented to the alien's reapplying for admission.
>
> (iii) Waiver: The Secretary of Homeland Security may waive the application of clause (i) in the case of an alien who is a VAWA self-petitioner if there is a connection between—
> > (I) the alien's battering or subjection to extreme cruelty; and
> > (II) the alien's removal, departure from the United States, reentry or reentries into the United States; or attempted reentry into the United States.

8 U.S.C. § 1182(a)(9)(C).

### b.     *The Parties' Dispute*

The parties' dispute presents a narrow question of statutory interpretation that is properly resolved on a motion to dismiss. Defendants determined that Gallardo Solis is inadmissible under Section (9)(C), because he "ha[d] been unlawfully present in the United States for an aggregate period of more than 1 year . . . [and] enter[ed] . . . the United States without being admitted" when he entered from Mexico in 2005 at 15 years old, and thereafter remained in the United States for more than one year.[3] Compl. ¶ 27–29. The parties agree that the

---

[3] In 2017, Gallardo Solis, who had been granted Deferred Action for Childhood Arrivals ("DACA"), applied for and received an advanced parole document. Compl. ¶ 16. He then travelled to Mexico in July 2017 and returned three days later via JFK airport, where he was paroled into the United States. *Id.*; *see also* Def. Mem. at 5 n.5. The parties agree that, on the basis of this entry, Gallardo Solis was "inspected and admitted or paroled into the United States"

7

inadmissibility provision in Section (9)(B)(i) does not apply to Gallardo Solis's circumstances. The parties also agree that the term "unlawful presence," as used in Section (9)(C), is defined in Section (9)(B). § 1182(a)(9)(B)(ii). As to Section (9)(C), Gallardo Solis concedes that, absent the application of an exception, he is inadmissible under that Section. However, he argues that the exception for minors found in Section (9)(B), *see* § 1182(a)(9)(B)(iii)(I) (the "Minors Exception"), should be read to also apply to Section (9)(C) and therefore to his application for admission, *see id.* ("No period of time in which an alien is under 18 years of age shall be taken into account in determining the period of unlawful presence in the United States under clause (i).").

      *c.*  *Application*

  Gallardo Solis argues that because Section (9)(B)(ii), by its terms, defines "unlawful presence" for all of paragraph (9), the exceptions to Section (9)(B)'s penalties for unlawful presence, and specifically the Minors Exception, should be read to also apply to (and limit the reach of) Section (9)(C). Defendants counter that, under the tenets of statutory construction, the Minors Exception applies only to those grounds of inadmissibility set forth in Section (9)(B).

  The Court holds with defendants.

  As an initial matter, the Court finds the terms of Section (9)(B) and Section (9)(C) unambiguous. Gallardo Solis does not contend otherwise. Because Congress has spoken directly to the question at issue, the Court construes Section (9)(C) *de novo*. *See, e.g.*, *Nwozuzu*, 726 F.3d at 327 ("We conclude that, both in the text of the statute and its legislative history, Congress has spoken directly to the precise question at issue . . . . Applying the[] general rules of statutory construction, we conclude that Congress intended for the two clauses in [8 U.S.C.

---

before applying for Adjustment of Status. Def. Mem. at 5 n.5 (quoting 8 U.S.C. § 1225(a)). They disagree whether the approximately 12-year period between Gallardo Solis's 2005 unlawful entry and the 2017 travel renders him inadmissible pursuant to § 1182(a)(9)(C)(i)(I).

§ 1432(a)(5)] to mean different things." (internal quotation marks omitted)); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987) ("The question whether Congress intended the two standards to be identical is a pure question of statutory construction for the courts to decide.")

"When interpreting a statutory provision, [courts] begin with the language of the statute." *Nwozuzu*, 726 F.3d at 327. "If the statutory terms are unambiguous," the Court must "construe the statute according to the plain meaning of its words. The plain meaning is best discerned by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *Id.* (internal quotation marks omitted). Here, the plain meaning of Section (9)(B) and Section (9)(C) conclusively resolves the parties' dispute. The distinct conduct addressed in and penalized by each section, the distinct penalties provided for such conduct, and the distinct grounds for exceptions or waiver of those penalties, conclusively establish that the two sections, although located consecutively in § 1182(a)(9), are independent and self-contained.

First, Section (9)(B) and Section (9)(C) address and penalize different conduct. Section (9)(B) concerns non-citizens who have been unlawfully present in the United States for between six months and one year, *id.* at (i)(I), or more than one year, *id.* at (i)(II), and thereafter "seek admission[]" following their "departure or removal." *See* Section (9)(B) at (i). Section (9)(C), by contrast, concerns non-citizens who have either been "unlawfully present in the United States for an aggregate period of more than 1 year," *id.* at (i)(I), or "ordered removed" from the United States, *id.* at (i)(II), who then "enter[] or attempt[] to reenter the United States without being admitted." *See* Section (9)(C) at (i). Section (9)(B) thus is focused on non-citizens who were unlawfully present in the United States and then seek admission after their departure or removal; Section (9)(C) is focused on non-citizens seeking admission who were not only unlawfully present in the United States, but thereafter reentered unlawfully or attempted to do so.

Second, the two sections provide for different penalties. Under Section 9(B), a non-citizen who is unlawfully present for between six months and one year, if otherwise admissible, is eligible to return to the United States after three years, and a non-citizen who has been unlawfully present for more than one year—but does not thereafter enter or seek to enter without inspection—may return to the United States after 10 years. *See* Section (9)(B) at (i). In contrast, under Section 9(C), a non-citizen who has accumulated more than one year of unlawful presence in the aggregate and then "enters or attempts to reenter the United States" unlawfully "is inadmissible."

Third, each section contains its own—different—enumerated exceptions. In the case of Section (9)(B), there are five such exceptions, found at clause (iii): the Minors Exception; an exception for asylees; an exception for beneficiaries of family unity protection pursuant to § 301 of the Immigration Act of 1990; an exception for "battered women and children"; and an exception for "[v]ictims of a severe form of trafficking in persons." Section (9)(B) at (iii)(I)–(V). Each enumerated exception explicitly refers to "clause (i)," which is an unambiguous reference to clause (i) *of Section (9)(B)*. Unlike Section (9)(B), Section (9)(C) contains just one enumerated exception:

> [C]lause (i) shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Secretary of Homeland Security has consented to the alien's reapplying for admission.

Section (9)(C) at (ii). The reference to "clause (i)" in this provision unambiguously refers to clause (i) *of Section (9)(C)*.

Fourth, Section (9)(B) and Section (9)(C) provide different bases upon which a non-citizen may seek a waiver of the relevant ground of inadmissibility. Section (9)(B) provides that "[t]he Attorney General has sole discretion to waive clause (i) in the case of an immigrant who is

the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien." Section (9)(B) at (v). Here, too, the reference to "clause (i)" clearly refers to "clause (i)" of Section (9)(B). By contrast, Section (9)(C)'s waiver provision provides that "the Secretary of Homeland Security may waive the application of clause (i)" only for a Violence against Women Act "self-petitioner if there is a connection between . . . the alien's battering or subjection to extreme cruelty; and the alien's removal, departure from the United States, reentry or reentries into the United States; or attempted reentry into the United States." Section (9)(C) at (iii). Section 9(C)'s reference to "clause (i)," like the reference to the non-citizens "reentry or reentries into the United States," clearly applies to clause (i) *of Section (9)(C)*.[4]

The Court therefore rejects Gallardo Solis's invitation to read the Minors Exception, located within Section (9)(B), as also applicable to Section (9)(C). Simply put, there is no such exception within Section 9(C) and the Court has no legal charter to impute one to it. Critically, that Section already includes an explicit exception—different from the Minors Exception—in its text, *see* Section (9)(C) at (ii). Gallardo Solis offers no textually defensible basis to infer that Congress intended for the Minors Exception to apply *sub silentio* to Section (9)(C), as an additional implicit exception.

---

[4] Further indicative that Congress intended Sections 9(B) and 9(C) to be distinct and self-contained, Section (9)(B) includes a provision that tolls "the calculation of the period of time specified in clause (i)(I)" for up to 120 days in the case of a non-citizen who has been lawfully admitted or paroled into the United States, has "filed a nonfrivolous application for a change or extension of status" before the expiration of their authorized stay and has not worked without authorization. Section (9)(B) at (iv). Section (9)(C) contains no equivalent provision.

Gallardo Solis primarily argues that the term "unlawful presence"—common to both sections—is defined in Section (9)(B).  *See* Section (9)(B) at (ii).  But that appears to reflect the simple expedient of defining a term for the purposes of a given paragraph—here, § 1182(a)(9)—the first time it is used in that paragraph.  In all events, whatever Congress's reason for defining that term there, this feature of the statute does not empower the Court to add a textually absent exception to the unambiguous text of Section 9(C).[5]

The Court's reading is in accord with the other courts to have addressed this question.  *See Casillas-Casillas v. Lynch*, 626 F. App'x 770, 772–73 (10th Cir. 2015); *Rodriguez v. Mukasey*, 298 Fed. App'x 306, 307 (5th Cir. 2008) (per curiam); *Acosta v. Gonzales*, 439 F.3d 550, 557–58 (9th Cir. 2006), *overruled on other grounds*, *Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc); *see also Moreira v. Cissna*, 442 F. Supp. 3d 850, 856 (E.D. Pa. 2020); *Garcia Razo v. U.S. Dep't of State*, No. 2:18 Civ. 1569 (JAM), 2019 WL 1865924, at *3 (E.D. Cal. Apr. 25, 2019).  The Court is unaware of contrary authority.

Because Gallardo Solis's APA claim is based on the inaccurate premise that the Minors Exception of Section 9(B) applies to Section 9(C), and because it is undisputed that Gallardo Solis's inadmissibility is due to Section 9(C), the Court grants defendants' motion to dismiss his APA claim.

### B.  Claim for Relief under the Declaratory Judgment Act

The Declaratory Judgment Act provides federal courts with jurisdiction over cases of "actual controversy."  28 U.S.C. § 2201(a).  The Act, however, does not provide an independent cause of action; instead, "[i]ts operation is procedural only—to provide a form of relief

---

[5] Gallardo Solis's remaining arguments in opposition to the motion to dismiss are primarily policy arguments.  The policy merits of including a similar exception in Section (9)(C) are, however, legislative, not judicial, determinations.

previously unavailable." *Johnson v. Magnolia Pictures LLC*, No. 18 Civ. 9337 (VB), 2019 WL 4412483, at *3 (S.D.N.Y. Sept. 16, 2019) (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 247 F.R.D. 420, 422–23 (S.D.N.Y. 2007)). "A party seeking a declaratory judgment must thus provide a substantive claim to relief based on a law other than the Declaratory Judgment Act." *Hello I Am Elliot, Inc. v. Sine*, No. 19 Civ. 6905 (PAE), 2020 WL 3619505, at *11 (S.D.N.Y. July 2, 2020). Because the Court has dismissed Gallardo Solis's sole "substantive claim to relief based on" the APA, *id.*, his second claim for a declaratory judgment also fails.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss the Complaint in its entirety.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 10 and close this case.

SO ORDERED.

                                                      PAUL A. ENGELMAYER
                                                      United States District Judge

Dated: September 11, 2020
       New York, New York